FILED
2021 May-14  PM 04:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

_____

| | |
|---|---|
| **FERNANDO JEROME MALONE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CASE NO.:   5:21-cv-00180-LCB** |
| | ) |
| **TDMW MANAGEMENT, INC., d/b/a** | ) |
| **McDONALD'S #5566 and EMCAR** | ) |
| **Enterprises, LLC, d/b/a McDONALD'S** | ) |
| **#5566,** | ) |
| | ) |
| **Defendants.** | ) |

_____

## FIRST AMENDED COMPLAINT
_____

## INTRODUCTION

1.      This is an action alleging race and color discrimination, sexual harassment and retaliation in violation of violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq* ("Title VII").

2.      Plaintiff, Fernando Jerome Malone, seeks equitable relief, compensatory and punitive damages, attorney's fees and costs.

## JURISDICTION

3.      This action arises under 42 U.S.C. §§ 1981, 1988, and 2000e, *et seq.*

4.      This Court maintains subject matter jurisdiction under 28 U.S.C. §§1343 (3) and 1343 (4) conferring original jurisdiction upon this court of any civil action to recover damages under any Act of Congress providing for the protection of civil right, under the Declaratory Judgment Statute, 22 U.S.C. § 2201 and, under 42 U.S.C. §§ 1981, 2000e *et seq.*

5.      The unlawful employment practices alleged herein have been committed within the Northern District of Alabama, Northeastern Division.

## PARTIES

6.      Plaintiff, Fernando Jerome Malone, is a black male and a citizen and resident of the United States who at all times relevant hereto, has been a resident of Alabama.

7.      Defendant, TDMW Management, Inc., d/b/a McDonald's #5566 (hereinafter referred to as "TDMW" or "Defendant") operates in Morgan County, Alabama within the Northern District of Alabama.

8.      Defendant, EmCar Enterprises LLC, d/b/a McDonald's #5566 (hereinafter referred to as "EmCar" or "Defendant") operates in Morgan County, Alabama within the Northern District of Alabama.

9.    TDMW and EmCar were joint employers of Plaintiff for purposes of Title VII and 42 U.S.C. § 1981.

## ADMINISTRATIVE PROCEEDINGS

10.    Within 180 days of the occurrences of which he complains, Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC")(attached hereto as Exhibit "A").

11.    On or about November 10, 2020, the EEOC issued a Notice of Right to Sue (attached hereto as Exhibit "B") with respect to Plaintiff's Title VII claims against TDMW and Plaintiff timely filed his complaint to assert the claims made before the EEOC.  On or about February 16, 2021, the EEOC issued a Notice of Right to Sue (attached hereto as Exhibit "C") with respect to Plaintiff's Title VII claims against EmCar and Plaintiff has timely filed his Amended Complaint to assert the claims made before the EEOC against EmCar.

## FACTUAL AVERMENTS

12.    Plaintiff restates and realleges the allegations contained in paragraphs 1 through 11 as if fully set out herein.

13.    Plaintiff is an African-American male who was employed at McDonald's Store # 5566 on Danville Road in Decatur, Alabama, which was, at the time of Plaintiff's hire in the Summer of 2019, owned by Defendant EmCar. Plaintiff was hired as a swing shift manager at that location.

14.     Plaintiff had been informed that Store #5566 was supposed to be transferred to Defendant TDMW Enterprises effective at 12:00 a.m. October 21, 2019.  However, there was a period of time during October 2019 when employees from both Emcar and TDMW managed the employees in Store #5566 and thus, Emcar and TDMW were joint employers of Plaintiff.

15.     On October 17, 2019, Plaintiff received a sexually explicit, vulgar and offensive text message from a 408 area code which made graphic references to the sender engaging in sexual acts with Plaintiff.  Upon information and belief, the text was sent to him by another male employee of Defendant EmCar, Jordan Williams, who had indicated that he was going to send Plaintiff an anonymous text.  Plaintiff also found out that day that a 17 year old employee, Nick L.N.U. had received sexually vulgar and explicit texts and also believed they had been sent to him by Williams.  Nick L.N.U. showed the texts to Plaintiff.  The texts contained suggestions about meeting the sender at a hotel and the sender performing sexual acts on Nick L.N.U., among other sexually suggestive things.

16.     Plaintiff reported Williams' behavior to Dee Buchanan, the scheduling manager for Store #5566, and she indicated she knew Jordan Williams had sent the texts to the young employee and that Williams had told her he had only been joking when she had inquired.

17.     Ms. Buchanan laughed off Plaintiff's complaint, and thereafter, Plaintiff called the General Manager of Store #5566, David Burke, and told him he wanted a meeting with him to discuss Mr. Williams.

18.     The meeting occurred on October 20, 2019, and during that meeting, Plaintiff informed Mr. Burke that Mr. Williams had sent both Nick L.N.U. and Plaintiff sexually offensive text messages.  Plaintiff asked Burke what he was going to do about it, and Mr. Burke said not to worry about it because Mr. Williams was going to be transferred to another store with Mr. Burke.

19.     Plaintiff told Mr. Burke he did not think that was an adequate solution because he was concerned about Mr. Williams engaging in similar behavior around other young employees at the other store. Plaintiff asked Mr. Burke for the contact information for Human Resources.   Mr. Burke did not provide it to Plaintiff.

20.     On October 22, 2019, Plaintiff called in late to work because the brakes went out on his car.  Per store policy, Plaintiff called his manager, Robin Winston, who, upon information and belief, was employed by TDMW at that time, to inform her he was going to be late an hour before his 4:00 p.m. shift was set to start.  She did not answer her phone, nor did she call Plaintiff back in the next thirty minutes, so Plaintiff called the Store and informed an employee that he was going to be late and that he would be in as soon as he could get his brakes fixed.

Plaintiff arrived at 6:30 p.m. and was informed by an assistant manager, Abby L.N.U., that she was sending him home because Plaintiff had not called in every hour on the hour despite the fact that the policy did not require that, thus depriving him of income for that shift.

21.    The next day, Plaintiff was called by another manager and asked if he could come in on his scheduled day off because a white employee, Frank Walkenhort, who was scheduled to work the closing shift for the Store, had not called in or shown up for work and that there was $500 missing from the safe from the night before.

22.    Plaintiff did not work that shift, but reported to work the next day on his scheduled shift.   When Plaintiff arrived, Mr. Walkenhort was already clocked in to work and Abby L.N.U. walked past him several times and never said anything to him about not calling or showing up for his shift the day before, which is supposed to be an automatic termination.

23.    Three hours into Mr. Walkenhort's shift, Plaintiff saw a message on the Store's group chat saying for anyone who saw Mr. Walkenhort to send him home for the day for not calling or showing up the day before.   Plaintiff noted on the group chat that Abbie L.N.U. had walked past Mr. Walkenhort several times that day without sending him home, despite the fact that she had sent Plaintiff

home two days before for being late, even though he had followed the policy and called in before his shift.

24.     Mr. Walkenhort was permitted to return to work the next day, October 25, 2019.   That same day, Abby L.N.U. asked Plaintiff to speak with her and Ms. Winston (who was on the telephone) and informed Plaintiff that they were writing him up for closing the Store early the week before.

25.     While Plaintiff did close the Store early the week before, it was because Plaintiff only had one other employee besides himself and the safety rules require that there be at least 5 employees on duty when the Store is open.   Mr. Walkenhort had closed the Store early a few days before Plaintiff closed the Store early and was not written up for closing the Store early.

26.     Plaintiff pointed this out to Ms. Winston and asked if it was because Mr. Walkenhort is white and Plaintiff is African-American. Winston stated that she already talked Walkenhort about it but she was not going to write him up, nor did he get written up for no call no show, which should have resulted in his automatic termination.   Plaintiff told Winston that that seemed discriminatory to him and asked for the Human Resources number and then she started cursing Plaintiff and said she "ain't going to fucking go back and forth with you about this shit". Plaintiff again asked for Human Resources' number and was told it was on the

wall in the back office, but it was not.   The only number was for George Houser, who was assisting with the transition of Store #5566 from EmCar's ownership to TDMW.

27.    Plaintiff called Mr. Houser's number twice but got no answer.   Mr. Houser arrived at the Store a few hours later and stayed approximately two hours, but never spoke to Plaintiff during that time.   As Mr. Houser was getting ready to leave, Plaintiff asked to speak to him and explained the issue of the racially discriminatory actions.   Mr. Houser's response was that Ms. Winston was new. Plaintiff also told him about Jordan Williams' behavior towards Nick L.N.U. and himself, and Mr. Houser said that Plaintiff could not prove it and refused to look at the text Plaintiff had received.

28.    Plaintiff again objected to Mr. Houser about Mr. Williams being moved to another store due to the possibility of him repeating the behavior with other employees, especially younger ones.   Plaintiff also complained to Houser about another employee, Marlon Williams, who had sent Plaintiff a sexually harassing text in which he suggested that Plaintiff meet him at his house after work.   Mr. Houser said they would discuss that later.   Plaintiff asked for a meeting with Mr. Houser and all the managers to discuss the issues and he agreed to do so.

29.    The following Tuesday, October 29, 2019, Plaintiff reported for his shift and clocked in and was shown a message from Ms. Winston stating that Plaintiff was no longer employed at Store # 5566.   Plaintiff clocked out and called Ms. Winston twice but she did not answer or respond to his message.   Plaintiff called Mr. Houser who likewise did not answer or respond to his message. Plaintiff also texted both Ms. Winston and Mr. Houser asking them why he was being terminated.   They did not reply.   Plaintiff texted Mr. Houser again and was not to text him again.

30.    Plaintiff was terminated from his position and not permitted to continue working at Store #5566 for either TDMW or EmCar after October 29, 2019.    EmCar and TDMW were acting as joint employers and denied Plaintiff continued employment with either EmCar and/or TDMW in retaliation for his complaints of sexual harassment of himself, his objections to sexual harassment of another employee and/or his complaints of racial discrimination with respect to racially discriminatory discipline.

31.    Plaintiff believes the above actions constitute sexual harassment and retaliation for his prior complaints of and objections to sexual harassment in violation of Title VII and disparate treatment because of his race and/or retaliation

for his complaints of racial discrimination in violation of Title VII and 42 U.S.C. § 1981.

32.     Plaintiff alleges that, at all times relevant hereto, the actions of the Defendants were intentional and/or done in reckless disregard for Plaintiff's right to a work environment that is free of sexual harassment, racial discrimination and retaliation.

33.     Plaintiff avers that Defendants made no effort to protect Plaintiff from racial discrimination and retaliation.

### COUNT I
### RACE DISCRIMINATION
### UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (AGAINST TDMW)

34.     Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 33 as if fully set out herein.

35.     Plaintiff avers that the Defendant TDMW's conduct, including, but not limited to, terminating his employment or denying him employment, as well as writing him up and not allowing him to work his scheduled shift, constituted disparate treatment and unlawful discrimination because of his race and color in violation of 42 U.S.C. § 2000e *et seq*, ("Title VII").   Plaintiff avers that Defendant TDMW's actions of discrimination against Plaintiff were intentional, performed with malice and/or done with reckless disregard to Plaintiff's federally-protected

civil rights.  As a proximate consequence thereof, Plaintiff lost wages, benefits, and other accrued emoluments associated with his employment; Plaintiff has been caused to suffer intense emotional distress, embarrassment, humiliation, anxiety and concern; Plaintiff is entitled to an award of back pay, front pay, benefits, reinstatement, consequential, and compensatory damages against Defendant; that Defendant's conduct was willful, wanton, and/or reckless or otherwise improper and egregious to a degree that would require or otherwise substantiate the allowance of punitive damages in an amount to be determined by the trier of fact. As a direct and proximate consequence of Defendant TDMW's wrongful conduct, Plaintiff has suffered injuries and damages.

36.    Defendant TDMW engaged in discrimination against Plaintiff on the basis of his race and color with malice or reckless indifference to Plaintiff's rights under Title VII.

37.    The conduct described herein constituted unlawful discrimination against Plaintiff in terms, conditions, and privileges of employment on the basis of his race and color in violation of Title VII.

38.    Plaintiff has and will continue in the future to suffer pecuniary losses as a direct result of Defendant TDMW's violation of Title VII.

**COUNT II**
**SEXUAL HARASSMENT**
**UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

### (<u>AGAINST TDMW</u>)

39.     Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 33 as if fully set out herein.

40.     Plaintiff was subjected to a sexually hostile work environment by his co-workers, as set forth *supra*.

41.      TDMW's actions and omissions in allowing such an environment to exist and to continue constituted discrimination against Plaintiff in terms, conditions, and privileges of employment on the basis of his sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e, *et seq.*

42.     TDMW's actions and omissions constituted discriminatory treatment of Plaintiff, which was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and created an abusive and hostile working environment.

43.     As a proximate consequence of the illegal conduct of TWMW, Plaintiff suffered lost wages, lost benefits, lost emoluments of employment, embarrassment, humiliation, anxiety, and concern.

44.     As a result, Plaintiff is entitled to an award of back pay, front pay, benefits, consequential, and compensatory damages against TDMW.

45.     TDMW's illegal conduct was intentional, willful, wanton, and/or in reckless disregard of Plaintiff's federally protected civil rights or otherwise

improper and egregious to a degree that it would require or otherwise substantiate the allowance of punitive damages in an amount to be determined by a jury.

**COUNT III**
**RETALIATION**
**UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(AGAINST TDMW)**

46.     Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 33 as if fully set out herein.

47.     Plaintiff avers that the Defendant TDMW's conduct, including, but not limited to, terminating his employment or denying him employment, as well as writing him up and not allowing him to work his scheduled shift, constituted unlawful retaliation in violation of 42 U.S.C. § 2000e *et seq*, ("Title VII") for his prior complaints of and objections to sexual harassment and complaints of race discrimination in violation of Title VII.  Plaintiff avers that Defendant TDMW's actions of retaliation against Plaintiff were intentional, performed with malice and/or done with reckless disregard to Plaintiff's federally-protected civil rights. As a proximate consequence thereof, Plaintiff lost wages, benefits, and other accrued emoluments associated with his employment; Plaintiff has been caused to suffer intense emotional distress, embarrassment, humiliation, anxiety and concern; Plaintiff is entitled to an award of back pay, front pay, benefits, reinstatement, consequential, and compensatory damages against Defendant TDMW; that

Defendant TDMW's conduct was willful, wanton, and/or reckless or otherwise improper and egregious to a degree that would require or otherwise substantiate the allowance of punitive damages in an amount to be determined by the trier of fact. As a direct and proximate consequence of Defendant TDMW's wrongful conduct, Plaintiff has suffered injuries and damages.

48.     Defendant TDMW engaged in retaliation against Plaintiff with malice or reckless indifference to Plaintiff's rights under Title VII.

49.     The conduct described herein constituted unlawful retaliation against Plaintiff in terms, conditions, and privileges of employment and Title VII.

50.     Plaintiff has and will continue in the future to suffer pecuniary losses as a direct result of Defendant TDMW's violation of Title VII.

**COUNT IV**
**RACE DISCRIMINATION**
**UNDER 42 U.S.C.§ 1981**
**(AGAINST TDMW)**

51.     Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 33 as if fully set out herein.

52.     Plaintiff avers that the Defendant TDMW's conduct, including, but not limited to, terminating his employment or denying him employment, as well as writing him up and not allowing him to work his scheduled shift, constituted disparate treatment and unlawful discrimination because of his race and color in

violation of 42 U.S.C. § 1981.  Plaintiff avers that Defendant TDMW's actions of discrimination against Plaintiff were intentional, performed with malice and/or done with reckless disregard to Plaintiff's federally-protected civil rights.  As a proximate consequence thereof, Plaintiff lost wages, benefits, and other accrued emoluments associated with his employment; Plaintiff has been caused to suffer intense emotional distress, embarrassment, humiliation, anxiety and concern; Plaintiff is entitled to an award of back pay, front pay, benefits, reinstatement, consequential, and compensatory damages against Defendant TDMW; that Defendant TDMW's conduct was willful, wanton, and/or reckless or otherwise improper and egregious to a degree that would require or otherwise substantiate the allowance of punitive damages in an amount to be determined by the trier of fact. As a direct and proximate consequence of Defendant TDMW's wrongful conduct, Plaintiff has suffered injuries and damages.

53.    Defendant TDMW engaged in discrimination against Plaintiff on the basis of his race and color with malice or reckless indifference to Plaintiff's rights under 42 U.S.C. § 1981.

54.    The conduct described herein constituted unlawful discrimination against Plaintiff in terms, conditions, and privileges of employment on the basis of his race and color in violation of 42 U.S.C. § 1981.

55.    Plaintiff has and will continue in the future to suffer pecuniary losses as a direct result of Defendant TDMW's violation of 42 U.S.C. § 1981.

**COUNT V**
**RETALIATION**
**UNDER 42 U.S.C.§ 1981**
**(AGAINST TDMW)**

56.    Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 33 as if fully set out herein.

57.    Plaintiff avers that the Defendant TDMW's conduct, including, but not limited to, terminating his employment or denying him employment, as well as writing him up and not allowing him to work his scheduled shift, constituted unlawful retaliation for his complaints of race discrimination in violation of 42 U.S.C. § 1981.  Plaintiff avers that Defendant TDMW's actions of retaliation against Plaintiff were intentional, performed with malice and/or done with reckless disregard to Plaintiff's federally-protected civil rights.   As a proximate consequence thereof, Plaintiff lost wages, benefits, and other accrued emoluments associated with his employment; Plaintiff has been caused to suffer intense emotional distress, embarrassment, humiliation, anxiety and concern; Plaintiff is entitled to an award of back pay, front pay, benefits, reinstatement, consequential, and compensatory damages against Defendant TDMW; that Defendant TDMW's conduct was willful, wanton, and/or reckless or otherwise improper and egregious

to a degree that would require or otherwise substantiate the allowance of punitive damages in an amount to be determined by the trier of fact.  As a direct and proximate consequence of Defendant TDMW's wrongful conduct, Plaintiff has suffered injuries and damages.

58.     Defendant engaged in retaliation against Plaintiff with malice or reckless indifference to Plaintiff's rights under 42 U.S.C. § 1981.

59.     The conduct described herein constituted unlawful retaliation against Plaintiff in terms, conditions, and privileges of employment in violation of 42 U.S.C. § 1981.

60.     Plaintiff has and will continue in the future to suffer pecuniary losses as a direct result of Defendant TDMW's violation of 42 U.S.C. § 1981.

**COUNT VI**
**RACE DISCRIMINATION**
**UNDER 42 U.S.C.§ 1981**
**(AGAINST EMCAR)**

61.     Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 33 as if fully set out herein.

62.     Plaintiff avers that the Defendant EmCar's conduct, including, but not limited to, terminating his employment or denying him employment, as well as writing him up and not allowing him to work his scheduled shift, constituted disparate treatment and unlawful discrimination because of his race and color in

violation of 42 U.S.C. § 1981.  Plaintiff avers that Defendant EmCar's actions of discrimination against Plaintiff were intentional, performed with malice and/or done with reckless disregard to Plaintiff's federally-protected civil rights.  As a proximate consequence thereof, Plaintiff lost wages, benefits, and other accrued emoluments associated with his employment; Plaintiff has been caused to suffer intense emotional distress, embarrassment, humiliation, anxiety and concern; Plaintiff is entitled to an award of back pay, front pay, benefits, reinstatement, consequential, and compensatory damages against Defendant EmCar; that Defendant EmCar's conduct was willful, wanton, and/or reckless or otherwise improper and egregious to a degree that would require or otherwise substantiate the allowance of punitive damages in an amount to be determined by the trier of fact. As a direct and proximate consequence of Defendant EmCar's wrongful conduct, Plaintiff has suffered injuries and damages.

63.    Defendant EmCar engaged in discrimination against Plaintiff on the basis of his race and color with malice or reckless indifference to Plaintiff's rights under 42 U.S.C. § 1981.

64.    The conduct described herein constituted unlawful discrimination against Plaintiff in terms, conditions, and privileges of employment on the basis of his race and color in violation of 42 U.S.C. § 1981.

65.     Plaintiff has and will continue in the future to suffer pecuniary losses as a direct result of Defendant EmCar's violation of 42 U.S.C. § 1981.

**COUNT VII**
**RETALIATION**
**UNDER 42 U.S.C.§ 1981**
**(AGAINST EMCAR)**

66.     Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 33 as if fully set out herein.

67.     Plaintiff avers that the Defendant EmCar's conduct, including, but not limited to, terminating his employment or denying him employment, as well as writing him up and not allowing him to work his scheduled shift, constituted unlawful retaliation for his complaints of race discrimination in violation of 42 U.S.C. § 1981.  Plaintiff avers that Defendant EmCar's actions of retaliation against Plaintiff were intentional, performed with malice and/or done with reckless disregard to Plaintiff's federally-protected civil rights.   As a proximate consequence thereof, Plaintiff lost wages, benefits, and other accrued emoluments associated with his employment; Plaintiff has been caused to suffer intense emotional distress, embarrassment, humiliation, anxiety and concern; Plaintiff is entitled to an award of back pay, front pay, benefits, reinstatement, consequential, and compensatory damages against Defendant EmCar; that Defendant EmCar's conduct was willful, wanton, and/or reckless or otherwise improper and egregious

to a degree that would require or otherwise substantiate the allowance of punitive damages in an amount to be determined by the trier of fact.  As a direct and proximate consequence of Defendant EmCar's wrongful conduct, Plaintiff has suffered injuries and damages.

68.    Defendant EmCar engaged in retaliation against Plaintiff with malice or reckless indifference to Plaintiff's rights under 42 U.S.C. § 1981.

69.    The conduct described herein constituted unlawful retaliation against Plaintiff in terms, conditions, and privileges of employment in violation of 42 U.S.C. § 1981.

**COUNT VIII**
**RACE DISCRIMINATION**
**UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(AGAINST EMCAR)**

70.    Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 33 as if fully set out herein.

71.    Plaintiff avers that the Defendant EmCar's conduct, including, but not limited to, terminating his employment and/or denying him employment, as well as writing him up and not allowing him to work his scheduled shift, constituted disparate treatment and unlawful discrimination because of his race and color in violation of 42 U.S.C. § 2000e *et seq*, ("Title VII").  Plaintiff avers that Defendant EmCar's actions of discrimination against Plaintiff were intentional, performed

with malice and/or done with reckless disregard to Plaintiff's federally-protected civil rights.  As a proximate consequence thereof, Plaintiff lost wages, benefits, and other accrued emoluments associated with his employment; Plaintiff has been caused to suffer intense emotional distress, embarrassment, humiliation, anxiety and concern; Plaintiff is entitled to an award of back pay, front pay, benefits, reinstatement, consequential, and compensatory damages against Defendant; that Defendant's conduct was willful, wanton, and/or reckless or otherwise improper and egregious to a degree that would require or otherwise substantiate the allowance of punitive damages in an amount to be determined by the trier of fact. As a direct and proximate consequence of Defendant EmCar's wrongful conduct, Plaintiff has suffered injuries and damages.

72.    Defendant EmCar engaged in discrimination against Plaintiff on the basis of his race and color with malice or reckless indifference to Plaintiff's rights under Title VII.

73.    The conduct described herein constituted unlawful discrimination against Plaintiff in terms, conditions, and privileges of employment on the basis of his race and color in violation of Title VII.

74.    Plaintiff has and will continue in the future to suffer pecuniary losses as a direct result of Defendant TDMW's violation of Title VII.

## **COUNT IX**

## SEXUAL HARASSMENT
## UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## (AGAINST EMCAR)

75.     Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 33 as if fully set out herein.

76.     Plaintiff was subjected to a sexually hostile work environment by his co-workers, as set forth *supra*.

77.     EmCar's actions and omissions in allowing such an environment to exist and to continue constituted discrimination against Plaintiff in terms, conditions, and privileges of employment on the basis of his sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e, *et seq.*

78.     EmCar's actions and omissions constituted discriminatory treatment of Plaintiff, which was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and created an abusive and hostile working environment.

79.     As a proximate consequence of the illegal conduct of EmCar, Plaintiff suffered lost wages, lost benefits, lost emoluments of employment, embarrassment, humiliation, anxiety, and concern.

80.     As a result, Plaintiff is entitled to an award of back pay, front pay, benefits, consequential, and compensatory damages against EmCar.

81.    EmCar's illegal conduct was intentional, willful, wanton, and/or in reckless disregard of Plaintiff's federally protected civil rights or otherwise improper and egregious to a degree that it would require or otherwise substantiate the allowance of punitive damages in an amount to be determined by a jury.

### COUNT X
### RETALIATION
### UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (AGAINST EMCAR)

82.    Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 33 as if fully set out herein.

83.    Plaintiff avers that the Defendant EmCar's conduct, including, but not limited to, terminating his employment and/or denying him employment, as well as writing him up and not allowing him to work his scheduled shift, constituted unlawful retaliation in violation of 42 U.S.C. § 2000e *et seq*, ("Title VII") for his prior complaints of and objections to sexual harassment and complaints of race discrimination in violation of Title VII.  Plaintiff avers that Defendant TDMW's actions of retaliation against Plaintiff were intentional, performed with malice and/or done with reckless disregard to Plaintiff's federally-protected civil rights.  As a proximate consequence thereof, Plaintiff lost wages, benefits, and other accrued emoluments associated with his employment; Plaintiff has been caused to suffer intense emotional distress, embarrassment, humiliation, anxiety and concern;

Plaintiff is entitled to an award of back pay, front pay, benefits, reinstatement, consequential, and compensatory damages against Defendant EmCar; that Defendant EmCar's conduct was willful, wanton, and/or reckless or otherwise improper and egregious to a degree that would require or otherwise substantiate the allowance of punitive damages in an amount to be determined by the trier of fact. As a direct and proximate consequence of Defendant EmCar's wrongful conduct, Plaintiff has suffered injuries and damages.

84.    Defendant EmCar engaged in retaliation against Plaintiff with malice or reckless indifference to Plaintiff's rights under Title VII.

85.    The conduct described herein constituted unlawful retaliation against Plaintiff in terms, conditions, and privileges of employment and Title VII.

86.    Plaintiff has and will continue in the future to suffer pecuniary losses as a direct result of Defendant EmCar's violation of Title VII.

87.    Plaintiff has and will continue in the future to suffer pecuniary losses as a direct result of Defendant EmCar's violation of 42 U.S.C. § 1981.

**WHEREFORE,** Plaintiff prays that this Court:

a.    Declare the conduct engaged in by Defendants to be in violation of Plaintiff's rights;

b.    Enjoin Defendants from engaging in such conduct;

c.      Order that Defendants reinstate and provide employment to Plaintiff, free and clear of racial and sex discrimination and retaliation;

d.      Award Plaintiff compensatory damages against Defendants that will fully compensate him for mental distress, anguish, pain, suffering, and concern that he has suffered as a direct and/or proximate result of the statutory and common law violations of Defendants as set out herein;

e.      Award Plaintiff for such punitive damages as will properly punish Defendants for the statutory and common law violations perpetrated upon Plaintiff as alleged herein, in an amount that will serve as a deterrent to Defendants and others from engaging in similar conduct in the future;

f.      Award Plaintiff his costs, disbursements and attorney's fees;

g.      Assume continuing and indefinite jurisdiction in order to ensure compliance with the terms of the orders requested herein; and

h.      Grant such further and other legal and equitable relief as it may deem just and proper.

Respectfully submitted this the 14th day of May, 2021.

*/s/ Rebekah Keith McKinney*
Rebekah Keith McKinney (ASB-3137-T64J)
WATSON McKINNEY, LLP
200 Clinton Avenue, W., Suite 110
Huntsville, Alabama 35801

Phone 256-536-7423
Fax 256-536-2689
mckinney@watsonmckinney.com

**JURY DEMAND**

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

*/s/ Rebekah Keith McKinney*
Rebekah Keith McKinney

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this the 14th day of May, 2021, I served a copy of foregoing upon the following by electronic service or by placing a copy of same in the United States mail, postage prepaid and properly addressed:

Ben C. Wilson, Esq.
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Montgomery, AL   36104

EMCAR ENTERPRISES, LLC, d/b/a
McDONALD'S #5566
c/o Richard H. Gill
444 South Perry Street
Montgomery, AL   36104

*/s/ Rebekah Keith McKinney*
Rebekah Keith McKinney