UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **FERNANDO JEROME MALONE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 5:21-cv-180-LCB |
| | ) |
| **TDMW MANAGEMENT INC.** and | ) |
| **EMCAR ENTERPRISES LLC,** | ) |
| | ) |
| Defendants. | ) |

## OPINION & ORDER

Fernando Jerome Malone sues his former joint employers—TDMW Management, Inc. and EmCar Enterprises, LLC—for race discrimination, retaliation, and sexual harassment under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq.* ("Title VII"). (Doc. 19 at 1–3). Before the Court is Malone's motion for default judgment against EmCar under Federal Rule of Civil Procedure 55. (Doc. 38 at 1–2). For the reasons below, the Court grants in part and denies in part the motion.

### I. BACKGROUND

The following facts come from Malone's amended complaint. In summer 2019, Malone, a Black male, began working as a "swing shift manager" at a McDonald's location owned by EmCar. (Doc. 19 at 3). In October 2019, EmCar began transferring ownership of the store to TDMW. *Id.* at 4. During the transfer,

and at all times relevant to this case, EmCar and TDMW jointly managed and employed Malone. *Id.*

On October 17, 2019, Malone received a sexually explicit text message from Jordan Williams, a male co-worker. *Id.* Knowing that Williams had previously sent an explicit message to another co-worker, Malone reported Williams's behavior to Dee Buchanan, his scheduling manager. *Id.* Buchanan, however, "laughed off" Malone's complaint, stating that Williams had only been joking around. *Id.* at 4–5. Three days later, Malone discussed Williams's behavior with David Burke, the store manager. *Id.* at 5. Malone reiterated his concerns, and Burke told Malone not to worry because he was going to transfer Williams to another store. *Id.* Malone objected to this course of action and requested the contact information for Human Resources, which Burke did not provide. *Id.*

On October 22, Malone called in late to work because of transportation issues. *Id.* Malone initially called his manager, Robin Winston, but she did not answer. *Id.* Malone resorted to calling the store and, explaining the situation to a co-worker, stated that he would report for his shift as soon as possible. *Id.* When Malone arrived, Abby, an assistant manager, sent him home without pay because he had not called in "every hour on the hour[.]" *Id.* at 6.

On October 24, Malone reported for work and discovered that Frank Walkenhort—a White co-worker—was still employed at the store, despite missing

his previous shift without calling in. *Id.* at 6. Abby did not send Walkenhort home, even though she sent Malone home for showing up late two days earlier. *Id.* at 6–7. Walkenhort faced no repercussions for failing to show up or call in to his prior shift. *Id.* at 7.

Then, the next day, Abby and Winston informed Malone that they were "writing him up" for closing the store early the previous week. *Id.* Malone responded that he had closed the store early due to a staffing shortage. *Id.* He further alleged that Walkenhort had previously closed the store early and received no reprimand. *Id.* Malone told Winston that this "seemed discriminatory to him" and asked for Human Resources contact information, which Winston did not provide. *Id.* at 7–8.

That same day, Malone met with George Houser, an individual who was assisting with the store's ownership transition. *Id.* Malone explained that he believed Winston had discriminated against him based on his race. *Id.* Malone also relayed that he had received sexually harassing messages from Jordan Williams and another male co-worker named Marlon Williams. *Id.*[1] Houser responded that they would discuss the issues later and, at Malone's request, agreed to hold a meeting with Malone and the other managers. *Id.*[2] Four days later, on October 29, Malone reported for work and learned that he was no longer employed at the store. *Id.* at 9. Malone

---

[1] Malone does not state when he received the message from Marlon Williams.

[2] Malone does not state whether such a meeting ever occurred.

3

clocked out and called Winston and Houser for an explanation, but neither responded. *Id.*

In February 2021, Malone filed this suit, alleging that EmCar and TDMW subjected him to unlawful employment practices under 42 U.S.C. § 1981 and Title VII. Malone later amended his complaint and served summons on EmCar. (Doc. 19 at 1); (Doc. 33 at 1). EmCar, however, failed to answer. At that point, Malone received a Clerk's entry of default against EmCar and filed the pending motion for default judgment. (Doc. 36 at 1); (Doc. 37 at 1); (Doc. 38 at 1).

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure 55 establishes a three-step process for obtaining a default judgment against a party who fails to answer or otherwise defend against suit. First, a plaintiff must apply for and receive a Clerk's entry of default. FED. R. CIV. P. 55(b)(2). Second, the plaintiff must file a motion for default judgment in the district court. *Id.* Third, the district court must find that the plaintiff's complaint states a claim for relief under the plausibility standard of Federal Rule of Civil Procedure 12(b)(6). *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam).

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim on which relief may be granted. FED. R. CIV. P. 12(b)(6). To survive such a motion, a complaint must contain facts that assert a facially plausible claim

for relief. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (per curiam). The plausibility standard requires "'enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556). At the motion to dismiss stage, a court accepts a complaint's factual assertions as true and construes those facts in the light most favorable to the pleader. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

## III.  DISCUSSION

Malone moves for default judgment against EmCar under Rule 55. (Doc. 38 at 1–2). The record reflects that EmCar received service of Malone's amended complaint on December 10, 2021, making its answer due by December 31, 2021. (Doc. 33 at 1). To date, EmCar has not answered or otherwise defended against suit. The record also reflects that Malone has applied for and received a Clerk's entry of default against EmCar. (Doc. 36 at 1); (Doc. 37 at 1). Accordingly, the only remaining issue is whether Malone states a plausible claim against EmCar.

In his amended complaint, Malone brings five claims against EmCar: (1) race discrimination under 42 U.S.C. § 1981; (2) retaliation under § 1981; (3) race discrimination under Title VII; (4) retaliation under Title VII; and (5) sexual harassment under Title VII. (Doc. 19 at 17–24). Because the same analytical

standards and proof requirements that govern discrimination claims and retaliation claims brought under Title VII also govern discrimination claims and retaliation claims brought under § 1981,³ the Court addresses only Malone's Title VII claims.

### A. Race Discrimination

Malone states a plausible race discrimination claim against EmCar. Title VII makes it unlawful for an employer to discriminate against an employee on the basis of race. 42 U.S.C. § 2000e-2(a)(1). Default judgment on a race discrimination claim is proper "when the well-pleaded factual allegations of a complaint plausibly suggest that the plaintiff suffered an adverse employment action due to intentional racial discrimination." *Surtain*, 789 F.3d at 1246. Termination and suspension without pay constitute adverse employment actions. *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1266 (11th Cir. 2021) (per curiam).

In this case, Malone alleges that EmCar suspended him without pay for one shift and ultimately terminated his employment due to his race. (Doc. 19 at 20). He also maintains that EmCar's actions were intentional. *Id.* at 20–21. Accordingly, the Court finds that Malone states a plausible race discrimination claim against EmCar.

---

³ *Bryant v. Jones*, 575 F.3d 1281, 1296 n.22 (11th Cir. 2009) (discrimination claims); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (retaliation claims).

B. **Retaliation**

Malone states a plausible retaliation claim against EmCar. Title VII prohibits an employer from retaliating against an employee for opposing "any practice made an unlawful employment practice," including racial discrimination. 42 U.S.C. § 2000e-3(a). To state a "prima facie case"[4] of retaliation, a plaintiff must allege: (1) that he participated in a statutorily protected activity; (2) that he suffered an adverse employment action; and (3) that the adverse action was causally related to the protected activity. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc). As discussed above, Malone plausibly establishes that he suffered an adverse employment action. *See supra* Section III.A. Accordingly, the Court focuses on the first and third elements.

Malone plausibly establishes the first element. Under the first element, statutorily protected activity includes both formal and informal complaints. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016). A complaint constitutes protected activity when the plaintiff "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). Here, Malone complained to Winston and Houser about what he reasonably perceived as race

---

[4] A "prima facie" case is defined in part as "[t]he establishment of a legally required rebuttable presumption." *Prima Facie Case*, BLACK'S LAW DICTIONARY (11th ed. 2019).

discrimination. (Doc. 19 at 7–8). Malone's allegations plausibly establish that he had a good-faith belief that EmCar had discriminated against him based on his race. Accordingly, Malone plausibly establishes that he engaged in protected activity.

Malone also plausibly establishes the third element. Under the third element, to establish causation, a plaintiff must show "that the protected activity and the adverse action were not wholly unrelated." *Gogel*, 967 F.3d at 1135 (quoting *Goldsmith*, 513 F.3d at 1278). Very close temporal proximity between protected activity and adverse action is alone sufficient to establish causation when the adverse action occurs less than one month after the protected activity. *See, e.g.*, *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam); *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Here, Malone's discharge came four days after his complaints to Winston and Houser. (Doc. 19 at 7-9). Accordingly, Malone plausibly establishes causation. The Court therefore finds that Malone states a plausible retaliation claim against EmCar.

### C. Sexual Harassment

Malone fails to state a plausible sexual harassment claim against EmCar. Title VII makes it unlawful for an employer to discriminate against an employee on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). There are two scenarios where sexual harassment is actionable as sex discrimination: (1) through an adverse employment action; and (2) "through the creation of a hostile work environment caused by sexual

harassment that is sufficiently severe or pervasive to alter the terms and conditions of employment." *Jackson v. Ala. Dep't of Corr.*, 643 F. App'x 889, 891 (11th Cir. 2016) (per curiam). Malone's claim falls into the second category. (Doc. 19 at 22).

To establish sexual discrimination claim based on a theory of hostile work environment, a plaintiff must show in part "that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment[.]" *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc). Whether harassment is "severe" or "pervasive" turns on the totality of the circumstances, but four factors are particularly relevant: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc).

In this case, the totality of the factors and circumstances weigh against Malone. For starters, Malone points to just three instances of harassment between summer 2019 and October 2019. (Doc. 19 at 3–4, 8–9). This does not constitute "frequent" harassment. *See, e.g.*, *Mendoza*, 195 F.3d at 1249 (holding that five instances of harassment over eleven months is not frequent); *Guthrie v. Waffle*

*House, Inc.*, 460 F. App'x 803, 807 (11th Cir. 2012) (per curiam) (holding that a "few dozen" instances of harassment over eleven months is not frequent).

What's more, Malone does not allege that he suffered physical or threatening harassment. Nor does he allege that the harassment he faced negatively impacted his job performance. Accordingly, under the totality of the factors and circumstances, Malone fails to plausibly establish that the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatorily abusive working environment. The Court therefore finds that Malone does not state a plausible sexual harassment claim against EmCar.

## IV. CONCLUSION

For these reasons, the Court **GRANTS** in part and **DENIES** in part Malone's motion for default judgment. Default is appropriate on Malone's race discrimination and retaliation claims against EmCar because these claims are facially plausible under Title VII and § 1981. Default is inappropriate on Malone's sexual harassment claim against EmCar because this claim is not facially plausible under Title VII.

For the same reason, and because Malone brings an identical sexual harassment claim against TDMW, the Court **DISMISSES** Malone's sexual harassment claims without prejudice. Malone may file a second amended complaint within fourteen days of this order should he wish to further pursue his sexual

harassment claim against EmCar and/or TDMW. Otherwise, the Court will assess damages against EmCar after reaching a disposition of TDMW.

    **DONE** and **ORDERED** February 18, 2022.

                                                    _____
                                                  **LILES C. BURKE**
                                                  UNITED STATES DISTRICT JUDGE